UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARSHA RUDDELL BROWN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 1:14-cv-00931-JMS-DML ) |
| BMW OF NORTH AMERICA, LLC, | ) ) |
| Defendants. | ) |

# **ORDER**

On September 29, 2012, Plaintiff Marsha R. Brown was driving her 2007 Mini Cooper on a highway when her vehicle went off the road, rolled into a ditch, and landed on its roof. As a result, Ms. Brown sustained a cervical fracture, which left her partially quadriplegic. Ms. Brown filed the underlying cause of action for negligence against Defendant BMW NA of North America ("BMW NA"). [Filing No. 42.] BMW NA has a filed a Motion to Exclude All Evidence Related to Human Subject Rollover Demonstrations Conducted by Plaintiff's Counsel and Related Paper. [Filing No. 120.] According to BMW NA, Ms. Brown's counsel, David Scott, designed and led rollover demonstrations using Ford Explorers for a previous automotive product liability case to show that injuries suffered by that plaintiff could have been prevented by an alternative design of the restraint system. BMW NA believes that Mr. Scott will attempt to improperly introduce evidence from those demonstrations here, and it seeks to exclude it. Ms. Brown opposes BMW NA's motion. [Filing No. 128.] For the reasons detailed below, the Court **GRANTS** BMW NA's Motion.

1

# I.
## RELEVANT BACKGROUND

### A. Rollover Demonstrations

In 2008, Mr. Scott was the plaintiff's counsel for *Green v. Ford Motor Co.*, No. 1:08-CV-0163-LJM-TAB, 2010 WL 1726620, at *1 (S.D. Ind. 2010), an automotive products liability case. The plaintiff in *Green* was rendered quadriplegic after he struck the end of a guardrail and rolled down an embankment while driving his 1999 Ford Explorer Sport on the highway. *Id.* The issue in that case was "the extent to which the seat belt system . . . could reasonably be expected to protect the occupants in a rollover." *Id.* Mr. Scott wanted to introduce evidence of the demonstrations that he performed on Ford Explorers that he claimed demonstrated that an alternative design to the restraint system could have avoided the plaintiff's injuries. *Id.* The district court described Mr. Scott's demonstrations as follows:

> In an attempt to demonstrate that [Ms.] Green's injuries could have been avoided with the use of alternative designs, counsel for [Ms.] Green arranged and performed tests on exemplar vehicles. . . . On one occasion, [Mr. Scott] performed a test on an alternative design for a restraint system by using a 1997 Chrysler Sebring seat attached to a white 1999 Ford Explorer Sport 4 x 4 2-door (the "White Explorer"). [Mr. Scott] placed the White Explorer at the top of an embankment and used a Bobcat loader to lift one side of the White Explorer until it tipped over and rolled down the embankment. [ ] [Mr.] Scott, directly participated in the August 27, 2009, test as a live human surrogate. On another occasion, [Mr. Scott] attempted a similar test with another 1999 Ford Explorer. During this test, [Mr. Scott] unsuccessfully tried to utilize a "screw test," which involves taking the vehicle and driving the wheels up one side of a ramp to cause the vehicle to rollover. Apparently the vehicle could not obtain the requisite speed to properly execute this maneuver. Therefore, [Mr. Scott] executed another rollover from a stationary position with the use of a fork lift. According to [the plaintiff], both tests demonstrate that neither "dummy" was "injured" with the use of an alternative design and that, therefore, the tests prove that an alternative design was available to Ford.

*Id.* The defendant moved to either disqualify Ms. Scott or exclude the demonstrations. *Id.* at *6. The district court ultimately found the evidence was inadmissible to demonstrate replications of the accident because they were not sufficiently similar to the accident. *Id.* at *2.

Thereafter, Mr. Scott and several others, including Gary Whitman, co-authored a paper entitled "Rollover testing with volunteer live human subject" (the "Paper"), which was published in the International Journal of Crash Worthiness. [Filing No. 120-2.] Mr. Whitman admitted that he discouraged Mr. Scott from conducting the demonstrations using himself as the human subject and at the time, was not aware that Mr. Scott chose to move forward. [Filing No. 120-6 at 4.] Mr. Whitman testified that Mr. Scott had jumped a lot of steps that would not have been approved by a "human subject testing board." [Filing No. 120-6 at 4.] Mr. Whitman also stated that after Mr. Scott chose to conduct more rollover demonstrations, Mr. Whitman thought it was important to publish this information. The Paper provides a detailed analysis of the rollover demonstrations that Mr. Scott performed and includes visuals of those demonstrations. [Filing No. 120-2.]

### B. Ms. Brown's Case

Ms. Brown filed this cause of action alleging that on September 29, 2012, she was driving her 2007 Mini Cooper in Martin County, Indiana, when it went off the road, rolled into a ditch, and landed on its roof. [Filing No. 42 at 4.] She claims that the "seat belt system allowed her to make injurious contact with the roof of the vehicle," leaving her partially quadriplegic. [Filing No. 42 at 4.] She filed one count of negligence against BMW NA arguing that "a properly designed seat belt system would have prevented [her] from making contact with the roof of her vehicle . . . ." [Filing No. 42 at 5.]

BMW NA has now filed a motion asking the Court to exclude evidence that relates to the demonstrations that Mr. Scott conducted in preparation for *Green* and the subsequent Paper detailing those demonstrations. [Filing No. 121 at 1-2.] BMW NA claims that "materials from the demonstrations and Paper were included in the files of [Mr.] Whitman and Dr. Sri Kumar

3

(Plaintiff's biomechanical expert)." [Filing No. 121 at 2.] The motion is now ripe for the Court's review.

## II.
### DISCUSSION

BMW NA argues that Mr. Scott's Paper and any other evidence related to the rollover demonstrations should be excluded because 1) they are unreliable under Federal Rule of Evidence 703 since Mr. Scott, who is not an engineer, designed and carried out the demonstrations, and 2) they are irrelevant under Federal Rule of Evidence 402.[1] [Filing No. 121 at 8-11.] The Court will address the issues accordingly.

### A. Whether the Demonstrations and Paper are Reliable

BMV NA argues that the demonstrations and the Paper are not reliable because they are based on "methodologies, data, and design decisions made by [Mr. Scott, who] is not an engineer and is not an expert in the field of automotive safety, and conducted by him for the specific purpose of litigation." [Filing No. 121 at 9.] It argues that the demonstrations were overseen and conducted by lawyers, not a qualified engineer, and they conflict with medical ethical principles regarding human experimentation. [Filing No. 121 at 10.]

In response, Ms. Brown does not respond to BMW NA's position. Rather, she argues that the Paper is a learned treatise that has been relied upon by experts, and that BMW NA moved to exclude the demonstrations and Paper because Dr. Robert Banks, a biomechanical expert, testified that the Paper was "unethical and immoral." [Filing No. 128 at 1.] According to Ms. Brown, Dr.

---

[1] BMV NA also argues that the publication and demonstrations would be unfairly prejudicial pursuant Federal Rule of Evidence 403. [Filing No. 121 at 11.] However, the Court need not address this issue because, as will be detailed, it finds that the evidence is inadmissible on other grounds.

4

Banks relied on the "Helsinki Protocol,"[2] which applies to "physicians and medical treatment," and does not address the automotive safety concepts. [Filing No. 128 at 2.] She further claims that the "likely reason that Dr. Banks' testimony is off base [is because] he only had one week before his deposition to review the [P]aper . . . and come up with a way to try to keep it out." [Filing No. 128 at 2-3.] According to Ms. Brown, BMW NA takes issue with the Paper because it involved Mr. Scott as the "human subject" of the rollover demonstrations and he "could not possibly know what he was doing." [Filing No. 128 at 5.] She argues that Mr. Scott explained the process of these tests and that he "put in so much work leading up to the testing that he could qualify as an expert." [Filing No. 128 at 3-4.] She also thoroughly explains why Mr. Scott decided to use "human testing" in the demonstrations without first using dummies. [Filing No. 128 at 5-8.]

In reply, BMW NA points out that Ms. Brown fails to respond to its arguments, and reiterates that the demonstrations and the Paper are not reliable because Ms. Brown's accident is completely different from the accident that Mr. Scott attempted to recreate in *Green*. [Filing No. 131 at 1-3.] BMW NA rejects Ms. Brown's characterization of Dr. Banks' testimony, and argues that his testimony supports BMW NA's position that the demonstrations and the Paper "are unreliable and were not performed with the scientific rigor expected of experts in the field of automotive safety and design . . . ." [Filing No. 131 at 4.] BMW NA also argues that the Paper is

---

[2] The World Medical Association ("WMA") developed the Declaration of Helsinki, which is a "statement of ethical principles for medical research involving human subjects" and it pertains primarily to physicians, but the WMA encourages others involved in medical research of human subjects to adopt these principles. WMA Declaration of Helsinki – Ethical Principles for Medical Research Involving Human Subjects, http://www.wma.net/en/30publications/10policies/b3/ (last visited March 15, 2017)

not a "learned treatise" and that just because Mr. Scott has a history of litigating automotive safety cases does not make him an expert. [Filing No. 131 at 5-6.]

The factors the Court must consider in determining the admissibility of expert testimony are governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-95 (1993). "Expert testimony is admissible when the testimony is reliable and would assist the trier of fact to understand the evidence or determine a fact at issue in a case." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) (citing Fed. R. Evid. 702; *Daubert*, 509 U.S. at 589-91). The proponent of the expert bears the burden of demonstrating that the expert's testimony is admissible by a preponderance of the evidence. *Lewis*, 561 F.3d at 705; Fed. R. Evid. 702 Advisory Committee's note (2000 Amendments) ("[T]he admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence."). The Court has "great discretion" regarding the manner in which it evaluates the applicable factors. *Lewis*, 561 F.3d at 704.

Under *Daubert* and Rule 702, courts use "a three-step analysis: the witness must be qualified as an expert by knowledge, skill, experience, training, or education; the expert's reasoning or methodology underlying the testimony must be scientifically reliable; and the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007) (citing *Daubert* and Rule 702). In determining reliability, *Daubert* "sets forth the following non-exhaustive list of guideposts: (1) whether the scientific theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; or (3) whether the theory has been generally

accepted in the scientific community." *Ervin*, 492 F.3d at 904 (citing *Daubert*, 509 U.S. at 593-94).

Before addressing whether the evidence is reliable, the Court will first discuss Ms. Brown's argument that the Paper qualifies as a learned treatise. A learned treatise is an exception to the hearsay rule and may be read into evidence at trial if it "is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination" and "the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice." Fed. R. Evid. 803(18). Ms. Brown concedes that Mr. Scott will not be called to testify, [*see* Filing No. 128 at 9 ("The plaintiff will not offer Mr. Scott as a witness. . . . The only way he could wind up on the witness stand is if BMW calls him.")], and she does not explain whether any other expert will be called to the stand to introduce the Paper into evidence. Moreover, as will be discussed in further detail, the Paper is not reliable authority. Therefore, the Paper does not qualify as a learned treatise.

Following the standard set forth above, the Court will address whether Mr. Scott, who led the rollover demonstrations, is a qualified expert. Ms. Brown explains that "Mr. Scott put in so much work leading up to the testing that he could qualify to testify as an expert . . . under FRE 702," [Filing No. 128 at 5], but also admits that he "lacks an engineering degree," [Filing No. 128 at 8]. Ms. Brown provides no guidance to the Court on what knowledge, skill, experience, training, or education would make Mr. Scott an expert in the field of automotive safety. As BMW NA pointed out, although Mr. Scott is an attorney who has litigated products liability cases that have involved engineering issues and has worked with experts in the field of automotive safety, such experience and involvement do not make him an expert. The Court agrees.

7

In any event, the rollover demonstrations are also not scientifically reliable. Ms. Brown does not explain whether the methodologies and principles from the demonstrations have been tested, subjected to peer review and publication, or generally accepted in the scientific community. Ms. Brown explains that three separate publications[3] were considered when Mr. Scott moved forward with the rollover demonstrations. She claims that those papers were helpful because they discuss a series of tests that were done by a "legendary auto safety advocate." [Filing No. 128 at 6.] This, however, is inconsequential. The demonstrations were conducted by a lawyer, not engineers or any other experts in the automotive safety field, and they were done for the specific purpose of litigation in *Green*. Notably, Mr. Whitman testified that he discouraged Mr. Scott from doing the demonstrations in the first place because Mr. Scott jumped many steps that would need to be approved by the human subject testing board. [Filing No. 120-6 at 4.] Dr. Banks also testified that the Paper does not meet the ethical obligation in accordance to the Declaration of Helsinki, claiming that this Paper should have never been published and that he "wouldn't cite to it and would not rely upon it." [Filing No. 120-7 at 4-5.] Ms. Brown responds with unsubstantiated accusations that Dr. Banks had little time to review the Paper before his deposition and that BMW NA was attempting to use Dr. Banks' testimony to try to exclude the Paper. Because Ms. Brown sets forth no other evidence to support her position that the Paper and demonstrations are reliable in accordance with Federal Rule of Evidence 702, the Paper and all evidence related to the rollover demonstrations are excluded.

---

[3] The three papers that Ms. Brown references and includes as exhibits are as follows: Keith Friedman, Fiona Gaston, Jack Gaston, Donald Friedman, & Anthony Sances, Jr., *An Investigation of Hybrid III and Living Human Drop Tests*, Crit. Rev. Biomed. Eng. 28 (1&2) (2000), [Filing No. 128-3]; Donald Friedman & Keith Freidman, *Upper Interior Head, Face, and Neck Injury Experiments*, (1998), [Filing No. 128-4]; David Friedman & David Chng, *Human Subject Experiments In Occupant Response To Rollover With Reduced Headroom*, SAE Technical Paper Series (1998), [Filing No. 128-5].

8

### B.  Whether the Demonstrations and the Paper are Relevant

BMW NA claims that the demonstrations and the Paper are irrelevant because Mr. Scott attempted to recreate certain conditions of the accident in *Green*, which are wholly dissimilar to the conditions of Ms. Brown's accident.  [Filing No. 121 at 10.]

In response, Ms. Brown again does not respond to BMW NA's position and does not raise any other arguments than what has already been stated above.

In reply, BMW NA reiterates that the demonstrations and the Paper are unreliable because Ms. Brown's accident is completely different from the accident that Mr. Scott attempted to recreate in *Green*.  [Filing No. 131 at 1-3.]

Under the Federal Rules of Evidence, all relevant evidence is admissible.  Fed. R. Evid. 402.  Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it is without the evidence."  Fed. R. Evid. 401.  "Evidence of other accidents in products liability cases is relevant to show notice to the defendant of the danger, to show existence of the danger, and to show the cause of the accident."  *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1268 (7th Cir. 1988) (citations omitted).  "However, . . . the proponent must show that the other accidents occurred under *substantially similar circumstances*."  *Id.*  (original emphasis) (citations omitted).

Notwithstanding the fact that the evidence is not reliable, Ms. Brown has also failed to meet her burden to demonstrate that the rollover demonstrations and the Paper are relevant.  The rollover demonstrations were done by Mr. Scott for the purpose of supporting the facts and issues in *Green*, not Ms. Brown's case.  Notably, the district court in *Green* excluded the rollover demonstrations.  It found that the demonstrations were not sufficiently similar and explained that Mr. Scott "sought to some degree of exactitude to replicate [the] accident," but that he was unable

to in part because he was could not "get the exemplar Explorers to roll over from a running start," but instead "commenced the rollover stationary position using a forklift," and that the demonstrations "do not account for the sheer velocity at which [the plaintiff's] 1999 Explorer was traveling . . . ." *Green*, 2010 WL 1726620, at *2.

The Court likewise finds the demonstrations and the Paper not relevant to the facts and issues of this case. Aside from the modifications that were made to the Ford Explorer, Ms. Brown's Mini Cooper differs greatly from the modified Ford Explorers used in the demonstrations. As pointed out by BMW NA, these differences include the size, mass, occupant lay out and dimension, seat belt components and geometry, and seating positions of each vehicle. Moreover, Ms. Brown's Mini Cooper veered off the highway to the right, rolled over, and landed on its roof, whereas the modified Ford Explorers were placed at the top of embankments, and rolled down with the help of a forklift. Because significant differences exist between the rollover demonstrations and Ms. Brown's accident, introducing this evidence to a jury would only cause confusion and delay. *See Natchtsheim*, 847 F.2d at 1269 (noting that "'when a claim is made for the showing of [similar] accidents, an element of a trial on collateral issues, sometimes termed a trial within a trial, is introduced with the real possibility of undue delay.'"). For the reasons stated above, the Court **GRANTS** BMV NA's Motion to exclude the Paper and all evidence from the rollover demonstrations.

### III.
### CONCLUSION

For the reasons detailed above, the Court **GRANTS** BMW NA's Motion to Exclude All Evidence Related to Human Subject Rollover Demonstrations Conducted by Plaintiff's Counsel and Related Paper. [Filing No. 120.]

Date:   March 20, 2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Thomas Patrick Branigan
BOWMAN & BROOKE LLP
thomas.branigan@bowmanandbrooke.com

John D. Black
BOWMAN AND BROOKE LLP
john.black@bowmanandbrooke.com

Richard H. Willis
BOWMAN AND BROOKE LLP
richard.willis@bowmanandbrooke.com

Jeffrey T. Gorcyca
BOWMAN AND BROOKE, LLP
jeffrey.gorcyca@bowmanandbrooke.com

Zlatina Georgieva
BOWMAN and BROOKE LLP
tina.georgieva@bowmanandbrooke.com

David V. Scott, Sr.
DAVE SCOTT PLC
dave@davescottplc.com

Blake N. Shelby
FROST BROWN TODD LLC
bshelby@fbtlaw.com

Eric A. Riegner
FROST BROWN TODD LLC
eriegner@fbtlaw.com

Kevin C. Schiferl
FROST BROWN TODD LLC
kschiferl@fbtlaw.com

Bradford James Smith
KEN NUNN LAW OFFICE
brads@kennunn.com

Chris Allan Moeller
KEN NUNN LAW OFFICE
chrism@kennunn.com

Jeffrey J. Shaw
KEN NUNN LAW OFFICE
jeffs@kennunn.com

Dean J. Arnold
NUNN LAW OFFICE
deana@kennunn.com

Michael W. Phelps
The Law Offices of Michael W. Phelps
phelps.legal@outlook.com